UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** : | Case No. CR1-04-057-02 |
| Plaintiff, : | |
| : | (Chief Judge Beckwith) |
| vs. : | |
| : | **DEFENDANT'S SENTENCING** |
| **JAMES ANDRÉ BLACK,** : | **MEMORANDUM** |
| : | |
| Defendant. : | |

Defendant, James André Black, respectfully suggests to the Court that a reasonable sentence would require a downward variance from the application of the sentencing guidelines for the reasons set forth herein.

The application of the sentencing guideline in this case yields an Offense Level 31 within Criminal History Category VI. This is due to the fact that Mr. Black has been determined to be a career offender. Without the career offender status, Mr. Black would have been an Offense Level 21, with a Criminal History Category IV. Considering the sentencing factors enumerated in 18 U.S.C. §3553(a), this Court should depart farther downward from the guidelines. Of course, such guidelines are no longer mandatory, but are advisory. *United States v. Booker*, 543 U.S. 220, 160 L. Ed. 2d 621, 125 S. Ct. 738 (2005). But now, advisory guidelines must be considered together with all of the other sentencing factors. As this Court well knows, it shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth with the statutory sentencing principles. Under 18 U.S.C. §3553(a)(2), the court shall consider:

(2) The need for the sentence imposed …

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrent to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

### PRE-SENTENCE REPORT

The pre-sentence report contains some mitigating information. Mr. Black acknowledge of the wrongfulness and criminality of his conduct. But, in comparison with his co-defendants, Leonard Drister and Trevor Woods, Mr. Black's conduct was much less severe and Mr. Black's criminal history was not as bad as Mr. Drister's and, in some ways, not as bad as Mr. Woods'.

Mr. Black voluntarily pleaded guilty to armed bank robbery and use of a firearm during a crime of violence. He acknowledged the truth of the statement of facts. (¶ 7).

Mr. Black admitted participating in the armed robbery, but did not assault or strike anyone inside the bank. He is very sorry for his conduct and stated "I am mad at myself … I hate the decisions I have made. (¶ 35)

Mr. Black gave a statement acknowledging brandishing a firearm and participating in the robbery. He also advised the government of his intentions to enter a plea of guilty in a timely fashion. (¶ 54)

Mr. Black is a 37-year old man. (¶ 68) He is likely to serve a significant term of imprisonment in this case. (¶ 80)

He is also currently serving an 8-year prison sentence imposed in California state court on October 1, 2004. (¶ 89)

### Conduct of the Offenders

On April 12, 2004, James André Black entered the PNC Bank brandishing a semi-automatic handgun. He jumped the teller counter and began removing money from the teller drawers. (¶ 19)

As the offenders left the bank, they got into a vehicle. Mr. Woods was driving the vehicle. Eventually, the police attempted to conduct a traffic stop and eventually the car was stopped. (¶ 22)

Initially, Mr. Black ran from the car. But, after a brief foot pursuit, Mr. Black was apprehended without further incident. (¶ 23)

Mr. Drister entered the PNC Bank brandishing a firearm and walked to the manager's office and placed a 9 mm Beretta Model 92FS semi-automatic handgun to the manager's head and moved him into the lobby area and told him to lie down. Mr. Drister also took $360.00 of deposit money belonging to a customer. (¶ 25) Once the vehicle, which Mr. Woods was driving, was stopped, Mr. Drister began shooting at the officers with his handgun as he exited the car. (¶ 22) After Mr. Drister fired multiple rounds, his firearm jammed and became inoperable. Mr. Drister held a bullet-proof vest in his right hand, which he used as a shield. (¶ 23)

Mr. Woods entered the PNC Bank brandishing a firearm. As the offenders left the bank, they got into a vehicle. Mr. Woods was driving the vehicle. As the police attempted to conduct a traffic stop, Mr. Woods fled from the police. Mr. Woods lost control of the vehicle and drove through a yard. He returned to the roadway and continued to flee from the police. Mr. Woods failed to negotiate a turn and struck a tree. Mr. Woods then exited the vehicle and ran. (¶ 22)

After a brief foot pursuit, Mr. Woods, Mr. Drister and Mr. Black were all apprehended by the officers without further incident. (¶ 23)

**Offender's Criminal History**

Mr. Black has some criminal history. This includes several convictions for transporting/selling controlled substances or possession of a controlled substance for sale. But, Mr. Black has no prior convictions for any offensive violence. Mr. Black also had, in the recent past, an 11-year history of no new convictions. This would be the period from 1993 until 2004. Mr. Black was incarcerated for part of that time, but this 11-year period includes over 6 years where Mr. Black was not incarcerated. (¶¶ 60-66)

Mr. Black's Criminal History Points totaled 9 Criminal History Points and he would have been in Criminal History Category IV but for the career offender status.

Mr. Drister was also determined to be a career offender. But, Mr. Drister's criminal history is so bad that he would have been a Criminal History Category VI even if he were not a career offender. His previous record includes the violent offenses of felonious assault and burglary.

Mr. Woods was determined to be in Criminal History Category IV, which is the same category Mr. Black would have been but for the career offender status. And Mr. Woods has a prior distribution of crack cocaine conviction and also has a conviction for carrying a loaded firearm into a public place.

Mr. Drister was sentenced to serve 235 months in prison for the bank robbery and 120 months for discharging a firearm during a crime of violence, for a total of 355 months of incarceration. (¶ 17)

Mr. Woods was sentenced to 57 months for the bank robbery and 84 months for brandishing a firearm during the commission of a crime of violence, for a total of 141 months. (¶ 18)

The recommended sentence of Mr. Black is 216 months for the bank robbery and 84 months for brandishing a firearm during the commission of a crime of violence, for a total of 300 months. It is also recommended that this sentence be consecutive to the 8-year sentence Mr. Black is currently serving for a California case.

**Victim Impact**

According to the case agent, none of the victims suffered physical harm. (¶ 27) "Customer One" indicated that she has suffered no ongoing physical or emotional complications. (¶ 28)

"Customer Two" indicated that she has suffered no long-term effects. (¶ 29)

"Customer Three" stated that she suffered no physical or mental effects from the incident. (¶ 30)

"Teller One" stated she did not suffer physical injury and she has not had ongoing mental health problems as a result of the offense. (¶ 31)

All but one $1,231.00 was recovered. (¶ 32)

There is no evidence that Mr. Black aided or induced Mr. Drister regarding the shooting at the police (¶ 34)

**Offender Characteristics**

Mr. Black is 37 years old. His parents were never married. His mother gave birth to him when she was just 14 years old. His mother resides in Compton, California. Mr. Black's half-brother has been incarcerated for 16 years for a murder conviction. (¶ 68)

Mr. Black's childhood was tumultuous. When he was 6 years old, he and his mother left to escape the physical abuse of his father. (¶ 69)

Mr. Black witnessed violence, drug-related criminal activity and the strong presence of street gangs from an early age. For a period of time, Mr. Black was involved with a street gang. He indicated that it provided him a perverse sense of family, since he grew up without an appropriate father figure and had no positive male role models. Mr. Black's mother struggled to provide for her family and constantly worked more than one job. (¶ 70)

Mr. Black's mother was interviewed during the process of preparing the pre-sentence investigation report. Mr. Black's mother verified the family history provided by Mr. Black. But when asked to provide insight into her son's behavior or to provide any information that may be helpful to the Court when imposing sentence, his mother advised that she cannot explain her son's behavior and declined to provide any further comment. (¶ 72)

Mr. Black would likely benefit from a substance abuse education and treatment program (¶ 77)

Mr. Black attended the 11th grade, but is interested in learning about plumbing and real estate investment. (¶ 78)

**CONCLUSION**

Title 18 U.S.C. §3553(a) offense states factors which must be considered in determining a reasonable sentence. Subsection (1) states that the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant.

Mr. Black acknowledges that he robbed the bank and brandished a firearm during the commission of this offense. Mr. Black also acknowledges the criminality and seriousness of this offense. Mr. Black is sorry for this offense, which is the first conviction that he has ever received for a crime of violence.

Thankfully, no one was physically injured and no one suffered any ongoing mental or emotional health problems as a result of this crime. All but $1,231.00 of the money was recovered, which is a minimal loss, especially for a bank the size of the PNC Bank.

Both Mr. Woods' and Mr. Drister's conduct was much more severe. Mr. Drister put a gun to the bank manager's head and moved the bank manager into the lobby area. Obviously, placing a gun to someone's head makes a situation much more dangerous

and the moving of the manager into the lobby area could be construed as kidnapping. Mr. Drister also stole money from a customer in addition to stealing the bank's money, which is more offensive. In addition, Mr. Drister committed the most egregious act of shooting at the police and did not stop shooting until the gun jammed. This could certainly be construed as attempted murder. So, Mr. Drister's acts, both inside the bank and outside the bank, were much more severe and were much more dangerous to the health, safety and lives of the people in the bank, the public and especially the police officers.

Mr. Woods did pretty much the same thing inside the bank as Mr. Black. But, when they left the scene, Mr. Woods drove the vehicle and fled from the police. Mr. Woods drove through a yard, returned to the roadway and continued to flee from the police until he failed to negotiate a turn and struck a tree. This conduct put life, health and safety of all the public on the roadway in danger. This was an egregious act.

The conduct of Mr. Drister and Mr. Woods was much more severe and dangerous than the conduct of Mr. Black. Mr. Drister's conduct did not stop until his gun jammed and Mr. Woods' conduct did not stop until he wrecked the car. While Mr. Black, after a very short foot pursuit, did cooperate and give in to the police without incident.

The history and characteristics of the defendants are likewise different. Mr. Drister has a Criminal History of VI, even before being determined to be a career offender, and included serious offenses of violence, such as felonious assault and burglary. Mr. Woods had a prior offense involving bringing a loaded firearm into a public place. So, both Mr. Drister and Mr. Woods have a prior history of violence or a serious potential for violence by carrying a loaded firearm into a public place, while Mr. Black has no prior offenses of violence at all.

Mr. Black's history is a sad history.  While Mr. Black's history does not give him license to commit crimes, it certainly can explain it to a great degree.  If you were making a recipe for getting a young man into criminal behavior, you would certainly put all of the ingredients that composed Mr. Black's life – born to a teenage mother with a violent father, which forced Mr. Black and his mother to take a bus in the middle of the night from Louisiana to Los Angeles, a young black man brought up with no father figure and no positive male role model, living in an economically depressed and crime-ridden area such as Compton, California, with a mother forced to leave her family unattended so that she could work 2 jobs to support the family, being exposed to violence, drugs and gangs at an early age, having less than a high school education.

All of these things would certainly go into the recipe for developing a person who will get into criminal behavior and Mr. Black had no choice about any of these facts, except for getting a high school education.  Again, this does not give Mr. Black permission to engage in criminal activity.  Granted, some people do get out of this environment without committing criminal acts, but it certainly does explain, in large measure, how Mr. Black's life came to this point.

In regard to the seriousness of the offense, Mr. Black does acknowledge that his offenses were serious, but Mr. Black argues that a sentence near what Mr. Woods received, which was approximately 12 years, would reflect that the offense was serious and promotes respect for the law and is a just punishment.  Twelve years is a long time. It also afford adequate deterrence to criminal conduct and would certainly protect the public from any further crimes of Mr. Black.

The recommended sentence of 300 months, which is 25 years, plus an additional 8 years for the California state case, certainly reflects the seriousness of the offense and promotes a respect for the law, affords adequate deterrence and would protect the public from further crimes of the Defendant, but considering the conduct of all three

defendants and the criminal histories of all 3 defendants, it would not provide a just punishment.

If Mr. Black is sentenced to 25 years, consecutive to the California state time, he would not be released from prison until he is over 60 years of age. If Mr. Black was given a sentence much closer to what Mr. Woods received, he would still be incarcerated for a very substantial amount of time, but would be released in his early 50's.

If it were not for the career-offender status, Mr. Black's offense level would have been 21 and his Criminal History a Category IV, the guideline range would have been 57 to 71 months in prison, plus the 84 months for the firearm count, and his sentence would have been very similar to what Mr. Woods received. Because he was determined to be a career offender, his offense level went from 21 to 31, and his criminal history went from a Category IV to a Category VI, and the minimum guideline range went from 141 months to 262 months, which is a difference of 121 months, or slightly over 10 years.

In *United States v. Foreman*, 436 F.3d 638 (6th Cir. 2006), the Sixth Circuit Court of Appeals stated "the Court may conclude that the sentence ought to be lower than the guideline range due to Section 3553(a)." Rather, a district court's mandate is to impose a "sentence sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a)(2)."

In *United States v. Williams*, 436 F.3d 706 (6th Cir. January 31, 2006), the court held that a guideline's sentence is afforded a presumption of reasonableness. In regard to *Williams*, the *Foreman* court stated that "Although this statement seems to imply some sort of elevated statute to the guidelines, it is in fact rather unimportant. *Williams* does not mean that a sentence outside the guidelines range -- either higher or lower -- is presumptively unreasonable.

Mr. Black asks that he be sentenced to a term that is sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a)(2). Mr. Black believes a term much nearer to what Mr. Woods received, which is 141 months, would be an appropriate sentence and, in the alternative, the minimum sentence under the guidelines, which is 262 months, and believes that this sentence should be concurrent to the California state time. This is what Mr. Black respectfully requests.

    /s/ Jonathan P. Dameron
Jonathan P. Dameron (0055421)
Attorney for James André Black
Schuh & Goldberg, LLP
2662 Madison Road
Cincinnati, Ohio 45208
(513) 321-2662
(513) 321-0855 (Fax)
Jdjd91@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Memorandum upon the office of the United States Attorney, via electronic filing, this 16th day of January, 2007.

    /s/ Jonathan P. Dameron
Jonathan P. Dameron
Attorney for James André Black

JPD\Black Ja.SM